MARY FITZGERALD, ADMINISTRATRIX, ETC., OF PATRICK FITZGERALD, DECEASED, RESPONDENT, *v.* THE CITY OF BINGHAMTON, APPELLANT.

*Negligence — liability of the city of Binghamton for damages sustained by one injured by reason of the defective condition of a public street.*

This action was brought to recover damages occasioned by the death of the plaintiff's intestate, which was caused by his falling from an embankment along which ran one of the defendant's streets. The evidence tended to show that the deceased, while passing along the street upon a dark and rainy night, stumbled over some defect, where the side of the street had been gullied out by rains, and fell, some thirteen feet, upon a culvert; that he was stunned and rendered unconscious, and rolled into a pool of water where he was drowned.

The defendant sought to defend the action upon the ground that the negligence, if any, was that of the common council and mayor, who were by the charter made commissioners of highways for said city, and that the charter exempted the defendant from liability for the negligence of any officer or officers, agent, servant or employee who might be elected, appointed or employed pursuant to its charter. The charter authorized an action to be brought against the officer guilty of negligence only, in case of "willful or gross neglect or intentional violation of duty," which was not claimed to exist.

*Held,* that as the plaintiff could have no remedy unless the defendant was held liable he was entitled to maintain this action.

*Fitzpatrick* v. *Slocum* (89 N. Y., 358); *Hardy* v. *City of Brooklyn* (90 id., 435), and *Vincent* v. *City of Brooklyn* (31 Hun, 122), followed.

APPEAL from a judgment in favor of the plaintiff, entered in Broome county upon the verdict of a jury, and from an order denying a motion for a new trial made upon a case and exceptions.

The action was brought to recover damages arising from the death of the plaintiff's intestate, who was killed while passing along one of the defendant's streets on a dark and rainy night. Evidence was given tending to show that the street in question, Robinson street, is for some distance embanked higher than the adjacent lots, and is carried across a shallow depression, "flats" or ravine, by a stone culvert. The plaintiff's intestate, on the evening of the 16th of October, 1884, was seen returning home along Robinson street, on the raised portion of it above described, and going east on the south side of the street; he had traveled over this place repeatedly for years and was thoroughly acquainted with it. On the morning of the next day he was found dead, face down in the creek, on the south side of the culvert. The defendant moved for a nonsuit at the close of the plaintiff's evidence, and again at the close of all the evidence, upon the grounds, among others, that under the defendant's charter (chap. 291 of 1867) it was expressly exempted from liability for any negligence, misfeasance or nonfeasance of its common council or its officers, and if any negligence could be imputed in omitting to put up barriers on either side of Robinson street, where it crossed over the culvert, that was the negligence of the common council and mayor, who were by the charter made commissioners of highways, and liable for any negligence as such. That the Robinson street road-bed was shown to have been in perfect order, and in accordance with the plan upon which it was built and graded at this point; that the city authorities acted judicially in determining and carrying out this plan, and any default, if any were shown, in maintaining the street according to that plan, was the negligence of its officers; that the evidence did not show that the plaintiff was not guilty of negligence, there being no proof from which it could be inferred either way. The motion was denied, and upon a verdict being rendered for the plaintiff, the defendant moved for a new trial, which was denied.

*Samuel Hand*, for the appellant.

*Edmund O'Connor*, for the respondent.

BOARDMAN, J. :

Plaintiff's intestate was killed by falling from an embankment on which was one of the defendant's streets. The night was dark and rainy and there was not sufficient light to enable a person passing along the side of this street to discover its imperfections. The evidence tends to establish that the deceased, while passing along this street, stumbled over some defect where the side of the street had been gullied out by rains and fell some thirteen feet upon a culvert, by which he was stunned and rendered unconscious, and rolled from thence into a pool of water, where he was drowned. There were no sidewalks at these points nor guard railings. From the judgment in favor of the plaintiff, and from the order denying a new trial upon a case made, the defendant appeals to this court. Three grounds for the reversal of such judgment and order are presented for our consideration :

*First.* If negligence was established upon the trial it was the negligence of the common council and mayor, who were, by the charter, in effect, commissioners of highways for said city, and by its charter the defendant is exempted from liability caused by their negligence in the care of this street.

*Second.* The plan of this embankment was *quasi* judicial and for an error therein the defendant is not responsible.

*Third.* There is no evidence to show that the deceased was free from negligence which contributed to his death.

We will discuss these questions in the order stated. There was enough evidence of negligence in the care of the street, its condition and want of repair, the absence of railings and the deficiency of artificial light to require its submission to the jury. This is not seriously controverted by the appellant. By its charter the defendant is exempted from any liability to any person for the negligence of any officer or officers, agent, servant or employee who may be elected, appointed or employed pursuant to its charter.

By the charter of the city of Brooklyn (Laws of 1862, chap. 63, § 39) the said city shall not be liable in damages for any nonfeasance or misfeasance of the common council, or any officer of the city or

appointee of the common council, of any duty imposed upon them or any or either of them by the charter or of any other duty enjoined upon them as officers of the government under the charter. In each charter provision is made for enforcing the performance of any duty by negligent officers by *mandamus*. By the Brooklyn charter an action for an injury may be maintained against such officers, while by the defendant's charter such an action can only be brought against them in case of "willful or gross neglect or intentional violation of duty," of which there is no claim in this case. This plaintiff can, therefore, have no remedy unless against defendant.

We think the cases of *Fitzpatrick* v. *Slocum* (89 N. Y., 358); *Hardy* v. *City of Brooklyn* (90 id., 435), and *Vincent* v. *City of Brooklyn* (31 Hun, 122), are in point and must control our decision in this case. The two charters are substantially alike in their features for exemption from liability. The learned judge, in Fitzpatrick's case (p. 365), says : "There must be a remedy in such a case where one is injured without fault of his own, by a defect in one of the streets or bridges of the city, either against the city or some of its officers."

In this case, as has been said, there has been no such "willful or gross neglect or intentional violation of duty" as will create any liability against any officer of the city. The liability of the common council and mayor, acting as commissioners of highways, by the language used, is restricted and taken away in this case, if such liability could ever exist. We think the remedy has been properly pursued against the defendant.

It is not the plan, upon which this street was constructed that was alone, if at all, in fault. The neglect to keep the same in repair, the absence of guard rails or sidewalks, the insufficient lights, constituted evidence from which the jury has properly inferred negligence. In these respects the case is distinguished from *Urquhart* v. *City of Ogdensburg* (91 N. Y., 67) and other similar cases. Indeed, its features more nearly resemble the cases of *Fitzpatrick* v. *Slocun* and *Hardy* v. *City of Brooklyn* (*supra*), where it was held that an action would lie.

The evidence of absence of contributory negligence is much stronger than in *Hart* v. *Hudson River Bridge Company* (80

N. Y., 622), or *Jones, Administratrix,* v. *New York Central and Hudson River Railroad Company* (28 Hun, 364 ; affirmed, without opinion, in 92 N. Y., 628) ; see, also, the opinion of the learned chief judge in *Stackus* v. *New York Central and Hudson River Railroad Company* (79 N. Y., 464). As is there said : " Mere precedents are of little value. No two cases are alike in all their circumstances."

Other cases might be cited, which, by their resemblance to the present one, would appear to justify the taking of this case from the jury. But upon the whole evidence we think that the deceased has not been shown to have been guilty of any want of care, prudence or caution in traveling over the street which should prevent a recovery. His intoxication, if there is any evidence of it, is at most a circumstance for the consideration of the jury, in connection with the other facts in the case.

We think the judgment and order should be affirmed, with costs.

HARDIN, P. J., and FOLLETT, J., concurred.

Judgment and order affirmed, with costs.