Osborne, J.
Plaintiff brings.this action to recover damages for injuries which she sustained on December 26, 1882, while walking along Court street in this city by the fall upon her of a wooden awning. . The defendant Ropes was at that time, and had been for some years prior thereto commissioner of city works.
It appears from the testimony given on the trial that the awning in question consisted of a board roof covering nearly the entire sidewalk, supported by rafters resting at one end on posts inserted near the curb, and fastened at the other end by nails driven obliquely, or “toe-nailed ” on to the face of the cornice attached to the front of the building. This awning had been erected some years previously, and there was testimony given on the trial tending to show that it was. improperly secured to the cornice, being only “toe-nailed” instead of being let into the wall of the building, and that the defects in its construction were patent and might have been readily detected. Prior to the accident there had been an accumulation of snow on the awning, and the policeman on the beat on the day of the accident had notified the keeper of the store over which this awning was built to remove the snow from the awning; the store-keeper failed to do this, -and *691 it is claimed that the accumulation of snow caused the awning to give way where it was “ toe-nailed ” to the building, and produced the injury to the plaintiff who was passing along at the time, to recover damages for which this action was brought.
The ordinances of the city then in force relating to awnings were put in evidence on the trial, from which it appears that only cloth or canvass covered awnings were permissible.
At the close of the plaintiff’s case, counsel for the city moved to dismiss the complaint on the grounds that plaintiff had failed to show any negligence imputable to the city, and that the city was relieved from any liability under what is known as the “ exemption clause” in the charter.
Counsel for the defendant Ropes also moved to dismiss the complaint as to his client on the ground that there was no evidence showing negligence on the part of Ropes or his subordinates, and also on the ground that said defendant was relieved from liability under the provisions of chapter 457 of the Laws of 1881.
The motion was granted by the learned trial judge as to the defendant the city of Brooklyn on the ground that ‘ ‘assuming that there was negligence on the part of the police, or the inspectors in allowing the awning to be erected and to be kept up,” the city was relieved from liability under the exemption clause in the charter, and as to defendant Ropes on the ground that in the absence of personal negligence on his part, he was exempted from his liability under the provisions of said chapter 457 of the Laws of 1881.
From the decisions granting the motions and the judgments entered thereon plaintiff brings this appeal.
In the case of Hume v. The Mayor, etc., of New York (74 N. Y., 264), which was a case of a similar character to this, the court of appeals say (p. 270), “ On the part of the plaintiff it is claimed that the structure in question (a wooden awning) was an unlawful encroachment upon the public streets, obviously dangerous to travelers and a nuisance which it was the duty of the city, after notice express or implied, to remove, in pursuance of its general duty to keep the streets and highways in repair and in safe condition for travel. Regarding the structure as unauthorized by the city, it is denied on the part of the defendant that it constituted a defect in the street which it fell within the scope of the duties of the city to remedy. The duty of the city to keep the streets, etc., in such repair that they may be safely traveled, and its liability to respond in damages to any person injured by its neglect so to do, are not questioned and are too well settled by authority to need discussion. (Citing cases.) * * *
“ In the present case the erection called an awning was in fact a permanent roofing of boards over the entire sidewalk, resting against the building and supported on the outside by wooden posts bedded in the ground near the *692 curbstone, thus converting that portion of the street into a covered way. It is obvious that such a structure made for private purposes, if unauthorized is an encroachment upon the public streets, and a nuisance especially if constructed so negligently as to be dangerous to persons passing under it.”
Taking the above as the law applicable to the facts of the present case, and there being no pretense that the awning in question was a legally authorized structure, we are of the opinion that in the absence of the exemption clauses above referred to, there was ample testimony to go to the jury on the question of the liability of the defendants.
This brings us to the real question in the case, to wit, how far the said exemption clauses; so called, relieved the defendants or either of them from liability.
First. As to the defendant Ropes who was the commissioner of city works.
Section 1, subdivision 1, of chapter 457 of the Laws of 1881, relating to the city of Brooklyn, provides among other things as follows:
“ Heads of departments and officers of said city shall not be liable to third parties for misfeasance or nonfeasance of any person appointed by or subordinate to them.”
This statute was enacted as an addition or amendment to Section 27 of title 19 of chap. 863 of the Laws of 1873 (being the city charter), constituting the so called “ exemption clause” which provides as follows:
The city of Brooklyn shall not be liable in damages for any misfeasance or nonfeasance of the common council or any officer of the city or appointee of the common council, of any duty imposed upon them, or any or either of them by the provisions of this act or of any other duty enjoined upon them or any or either of them, as officers of government, by any provision of this act, but the remedy of the party or parties aggrieved for any such misfeasance or nonfeasance shall be by mandamus or other proceeding or action to compel the performance of the duty or by other action against the members of the common council, officers or appointee as the .rights of such party or parties may by law admit, if at all.”
The defendant Ropes was the head of the department of city works and by the charter an officer of the city. What his liability might have been under the last quoted section 27 of the city charter, in the absence of the act of 1881, we need not now consider. But even if the act of 1881 had not been passed we hardly think it would be seriously contended that it was the duty of the commissioner of public works from time to time to personally inspect upwards of 500 miles of streets in order to discover whether obstructions or encroachments existed. •
By the charter, it is provided that there shall be certain bureaus in the department of city works, the chief officers, subordinates and employees of which shall be ap *693 pointed and removed at pleasure by the commissioner of city works, Vide title 14, § 3 of the charter.
Title 14, sec. 3, subd. 5 of the charter, further provides that there shall be a bureau having the care and charge inter alia “of keeping the streets, avenues and places free and clear of all encroachments, obstructions and incumbrances, * * * the erection of awnings, the chief of which shall be called the ' superintendent of streets.’ ”
If there was misfeasance or nonfeasance anywhere in the department of city works, in suffering the awning in question to be erected and remain, it was clearly the misfeasance of the superintendent of streets, on whom the duty was imposed of keeping the streets free and clear from obstructions and encroachments, and of supervising the erection of awnings, he, as appears from the extracts from the charter above quoted, was not an officer of the city; the most that could be claimed for him was that he was an officer, clerk or subordinate of a department of the city government, appointed and removable by the head of the department, he was a person appointed by and subordinate to the defendant Hopes, as the head of a department of the city, and the defendant Hopes is exempted from any liability for his misfeasance or nonfeasance by the act of 1881.
By the charter (title 14, sec. 1, subd. 5), the commissioner of city works is vested with the care of public buildings, and by virtue of the authority so vested in him, he appoints the keeper of the municipal building. In Vincent v. The City of Brooklyn, (31 Hun, 122), the city was held liable for the damages occasioned by the explosion of gas in that building, which occurred through the negligence of the keeper. We can see no stronger reason why the commissioner of city works should be exempted from liability in that case and the liability placed on the city than in the case before us.
We are therefore of the opinion that the nonsuit was properly granted as to the defendant Hopes, and the judgment as to him should be affirmed.
Second. As to the defendant The City of Brooklyn.
The exemption clause above quoted exempts the city from damages for the misfeasance or nonfeasance of the common council or any officer of the city or appointee of the common council, of any duty imposed upon them, or any or either of them, by the charter, or of any other duty enjoined upon them, or any of them, as officers of government,-by any provisions of the charter.
We are of the opinion that this so-called exemption clause should be strictly construed. Can it be truly said that the erection and maintenance of the awning in question was an act of misfeasance or nonfeasance of the common council? Clearly not.
As we have shown above in considering the case against the defendant Hopes, the erection and maintenance of the *694 awning was not an act of misfeasance or nonfeasance on his part as an officer of the city, nor did the keeping of the streets clear from obstructions and encroachments and “the erection of awnings,” come within the. scope of duty of any “appointee of the common council,” that, as above stated, was the duty of the superintendent of streets, “ a person appointed by and subordinate to ” the commissioner of city works. Nor was it his sole duty. By title 11, sec. 24 of the charter, it is made the duty of the police force of the city, among other things, “ to remove all nuisances in the public streets,” and also “to enforce and prevent the violation of all laws and ordinances in force in said city.”
It thus appears that the duty of preventing the erection of the awning in question, and of removing it when erected as a nuisance in a public street was a divided duty, devolved by the charter, not alone on a subordinate of the department of public works but also on the police force. Rehberg v. The City of New York (91 N. Y., 137), was an action for damages for injuries sustained by the fall of a pile of bricks on the street exceeding the prescribed height in violation of the city ordinances, the city charter provided for a bureau of encumbrances within the department of public. works and chief officer of such bureau, whose duty it was to remove encumbrances; the police force of the city were also charged with the duty of removing nuisances existing in the public streets and of enforcing the city ordinances. In that case the court held that notice to the policeman of the unlawful character of the obstruction was notice to the city and it is chargeable with any neglect on his part.
In Fitzpatrick v. Slocum et al., (89 N. Y., 358), the court says, in reference to the claim, that the city cannot be held liable under the terms of the exemption clause, “we are of the opinion that the exemption created by this section is not so broad as claimed. There must be a remedy in such a case where one is injured without fault of his own by a defect in one of the streets or bridges of the city either against the city or some one of its officers. The primary duty to keep its streets and bridges in .safe condition rests upon the city, and there is a general obligation upon it to use proper care and vigilance in putting and keeping its streets and bridges in such condition, and unless that duty has been plainly devolved upon some officer or officers of the city against whom a remedy for non-feasance can be had, the remedy is against the city upon its obligation. That section does not exempt the city from liability to discharge a duty resting upon it and which it has not devolved upon any one of its officers.”
Here as we have seen the duty in question was not plainly devolved upon any officer of the city, but was devolved as well on the superintendent of streets as on the police force.
The charter of the city of Binghamton exempts the city from liability for the negligence of any officer or officers, agent or employee elected, appointed or employed pursuant *695 to its charter- and authorized an action to be brought against the officer guilty of negligence only in case of wilful or gross neglect or intentional violation of duty. In Fitzgerald, administratrix, etc., v. The City of Binghamton (40 Hun, 332), plaintiff sued for damages for the death of her intestate, caused by his falling from an embankment running along one of the defendant’s streets, defendant claimed exemption on the ground that the negligence, if any, was that of the common council and Mayor who were by its charter made commissioners of highways for said city. The court held the following- Fitzpatrick v. Slocum et al.. (supra) that as the plaintiff could have no remedy unless the defendant was held liable, she was entitled to maintain the action.
In Fitzpatrick v. Slocum et al., the court further say: “If the commissioners of city works are not liable as we hold they are not and if there is no remedy against the police commissioners for not ¡appointing and keeping at this bridge sufficient keepers (and we. are also inclined to think a remedy against them would fail), then the remedy is against the city upon its primary obligation to keep its streets and bridges in a safe condition; and for not guarding this bridge sufficiently when it was operated for public use.”
So in this case we say if the commissioner of city works is not liable, and if there is no remedy against the police commissioner for the failure of the police to remove this awning as a nuisance in the public streets (and we are inclined to think a remedy against him would fail), then the remedy is against the city upon its primary obligation to keep its streets in a safe condition for public use by travelers.
W e are therefore of opinion that the learned trial judge erred in dismissing the complaint against the city of Brooklyn and the judgment in its favor dismissing the complaint should be reversed with costs to abide the event.
Judgment as to the defendant Ropes affirmed, with costs.
Judgment as to the defendant, The City of Brooklyn, reversed and a new trial granted, costs to abide the event.
Clement, J., concurs.