THE MAYOR and COUNCIL OF WILMINGTON, defendants below, plaintiffs in error, *vs.* LUTHER W. EWING and SYDNEY E. EWING, his wife, plaintiffs below, defendants in error.

*City Charter—Contract—Exemption from Liabilities—Vested Rights —Construction of Statute—Constitutionality of Statute.*

1. In the case of *Coyle vs. McIntyre*, 7 *Houst.*, 44, it was decided that a municipal corporation may be controlled and its constitution altered and amended by the government in such manner as the public interest may require, and that such legislative interference cannot be said to impair the contract by which the corporation was formed because there is in reality but one party to it; and that there is in fact no contract in any just sense of the word for the reason that public municipal corporations are not founded on contract. In view of such decision it is difficult to see how the consent of the city to an amendment to the charter could be of any consequence; such consent is not material.

2. In general, but not uniformly, it has been held that where the duty of control over the streets is imposed upon a municipal corporation, there is an implied liability arising from default in the performance of such duty. Such has been the construction given by the courts of this State to the charter of the City of Wilming-

ton prior to the act of April 24, 1889. But if the statute either expressly or by necessary intendment, enacts that the corporation shall not be subject to liability, there is an end of the matter. The power to alter, modify or take away the liability of municipal corporations for injuries sustained from defective streets and sidewalks has been frequently exercised by State legislatures and sustained by courts.

3. There is no principle of constitutional law which prohibits the Legislature from granting to a city special privileges and immunities not enjoyed by all other cities in the State.

4. While the maxim, " That where there is a wrong there is a remedy," is in general true, it is subject to qualifications and exceptions. If injuries have been sustained by reason of defective footways in a city, the party injured has no vested right to sue the city. The liability of the city arises not from any implied contract between the city and the person injured, but in the absence of statutory exemption, is implied by law from the duty imposed upon the city.

5. The act of April 24, 1889, is valid and constitutional in so far as it relieves the city of liability, even though that part of the act should be unconstitutional which purports to make property owners responsible for damages resulting from the defective condition of footways.

6. The great burden imposed upon municipal corporations by their unrestricted liability for injuries occasioned by defective streets and sidewalks, has doubltless been the cause of the frequent modification or removal of such liability.

*(April 18, 1899.)*

NICHOLSON, CH., and SPRUANCE, GRUBB, PENNEWILL, and BOYCE, Associate Justices, sitting.

*Robert G. Harman* for plaintiff in error.

*Lilburne Chandler* and *William S. Hilles* for defendant in error.

Supreme Court, June Term, 1898.

WRIT OF ERROR to the Superior Court of the State of Delaware, in and for New Castle County.

At the November term of the Superior Court of New Castle County, 1896, one Sydney E. Ewing and Luther W. Ewing, her

husband, brought an action of trespass on the case against "The Mayor and Council of Wilmington" for injuries alleged to have been received by the said Sydney E. Ewing, by her stepping into a partly open gutter plate on the northerly side of Ninth street between Shipley street and Orange street in the said City of Wilmington, and recovered damages therefor in the sum of five thousand dollars.

There was no evidence that the said gutter-plate was placed on said sidewalk by the city or any of its authorized agents, or that the defective condition of the same, or of said sidewalk, was caused by the city or any of its authorized agents, so that the main question involved was, whether the city—the Mayor and Council of Wilmington—in view of the above facts, was legally liable for the injuries alleged to have been thus received; the statute governing such cases being as follows:

"The owner of any premises fronting upon any footways shall be solely responsible for any damage that may result to persons or property by reason of any hole, excavation or obstruction in or upon such footways, or from any defective condition of such footways; *Provided,* however, that such hole, excavation or obstruction or other defective condition of the footways aforesaid is not caused by the city or any of its authorized agents."

*18 Del. Laws., 889.*

The assignment of errors will appear in the argument of counsel for appellant.

*Robert G. Harman,* for plaintiff in error:

(1) The Court erred in charging the jury as follows:

"It is vested with the power of taxation and does levy and collect from its citizens (and there is no limit on this power) such sums as are necessary for the purpose," that is for the sidewalks.

*Charter,* } Sidewalks.
*Secs. 119-120-121.* } Assessment *vs.* Property for cost.

*Charter, Sec. 118.* } Streets.
*Charter, p. 244.* } Taxation.
*Elliott on Roads and Streets, 370; 2 Dillon, Sec. 778; 2 Beach, Sec. 1074.*

(2) " The said owners can only repair the pavements or gutters by the permission of the city corporation."
*Charter, Secs. 119-120-121.*

(3) " We consider that duties once imposed and liabilities incurred by accepting and acting under an act of incorporation cannot be divested save the right to alter or amend be in the Constitution, or it affirmatively appear that the city has expressly agreed to such amendment, and should an act be passed not having such exception inserted, the incorporators having accepted without such reservations have no right to claim the benefit thereof."
*Coyle vs. McIntyre, 7 Houst., 44, at 100.*

(4) The Court erred in refusing to charge the jury as prayed for by the defendant below as follows:
" If the jury believe that the defective condition of said sidewalk (if said sidewalk was defective) was not caused by the city or any of its authorized agents, then its verdict must be for the defendant, and the burden is upon the plaintiff to prove that the city or some of its authorized agents made said sidewalks so defective by a preponderance of evidence."

(5) The Court erred in charging the jury as follows:

CULLEN, J., charging the jury:

" Gentlemen of the jury:—This is an action on the case brought by the plaintiffs, Luther W. Ewing and Sydney E. Ewing, his wife, against ' The Mayor and Council of Wilmington,' to recover damages alleged to have been received by Sydney E. Ewing on the night of the eighteenth day of October, 1894, by stepping

into an opening in the gutter-plate, which extended over a gutter in the sidewalk or pavement on the north side of West Ninth street, between Shipley and Orange streets, which opening existed, and was allowed to continue by reason of the negligence of the defendant. The plaintiffs contend, that there was across the pavement located on the north side of West Ninth street between Shipley and Orange streets, a gutter extending from the building to the curbstone on the street twelve feet in length, five and three-quarter inches wide and four inches deep, square in the bottom, which was covered by an iron gutter-plate being in two pieces and joining together about the centre of the pavement; that several inches of the gutter-plate next to the house, and a small piece next to the curbstone were broken off. That in the exercise of due care and diligence the said Sydney E. Ewing with her friend, Mrs. Dora Schultz, shortly after ten o'clock on the night of the eighteenth day of October, 1896, were walking over the said pavement, crossed by said gutter; that the night was dark, and no light sufficient to show an obstruction existing on said pavement, and while so passing over the same, the said Sydney E. Ewing stepped into an opening made by the slipping or sliding apart of the two sections of said gutter-plate, midway of said pavement; that the heel of her shoe passed through the opening made by the separation of the gutter-plates, into the gutter, some four inches deep, and thereby she sustained not only immediate, but permanent injuries of such a nature and character as to seriously affect her for life.

"It is contended on the part of the defendants, that there was no dangerous obstruction existing over said pavement by reason of said gutter-plate placed across said gutter and that if such existed, it was not occasioned by their fault or negligence. Defendants further contend that they are not responsible or liable for any injury that may occur to persons passing over the footways fronting the property of private individuals, but that the owner is wholly responsible under the provisions of an act of Assembly passed the 24th of April, 1889, for any damage that may result to any per-

son by reason of any hole, excavation or obstruction in or upon such footway, or from any defective condition of such footway; provided such defects are not caused by the city or its authorized agents. The defendants contend that any defects that existed were not caused by it or its authorized agents.

"Having thus briefly stated the grounds upon which the plaintiffs claim a verdict at your hands, and the reason upon which the defendants claim there is no right of recovery, we now proceed to charge you as to the law which we think applies to this case, and to the law as laid down, you are to apply the facts, which it is your sole province to decide.

"The law in this State relative to the liability of a municipal corporation, such as the defendants in this case, with reference to negligence, by which an injury may occur, is so well settled that it is hardly worth while to refer to the adjudicated cases, and I will only state the results. 'Tis the duty of the Street and Sewer Department acting under such corporation, having entire jurisdiction and control within the limits of said city of the streets, squares, lanes, walks, or alleys thereof, (said jurisdiction and control to extend 'from building line to building line') to keep the same in good repair and condition. They are bound to exercise due care and diligence that no dangerous holes, obstructions, or anything which may cause injury to persons, shall exist in the streets, pavements, lanes, or footways where the public have a right to travel night or day. They are not bound for any injury accruing from the act of God, as washouts from sudden storms; provided they have a reasonable time to repair, but if after a reasonable time and notice, they neglect, they are liable, and should a defect exist constituting danger in any street, footway, etc., and the same be not repaired in a reasonable time, the law presumes notice and the corporation would be liable.

"Notice may be actual, as where it is by word or writing, of a dangerous place or obstruction in the streets, footways, etc., given to the corporation; or it may be constructive, as where a defect exists for an unreasonable time, it being the duty of the corporation

to look after defects and remedy the same, it is presumed to know if such exist. The length of time to repair defects in streets, sidewalks, etc., would depend upon the extent of work to be done, but in one of our decisions two months is mentioned. The city is bound to keep in good and safe order and repair, the streets, sidewalks, etc., so that they may be reasonably safe for all persons to pass and repass, day or night. · The city under its charter having assumed the duties and liabilities therein imposed, our courts by a long line of uniform decisions have clearly defined what those duties and liabilites are.

"Having thus stated the law it becomes our duty to state to you what facts must be proved to your satisfaction by a preponderance of proof to enable the plaintiffs to recover.

"You must be satisfied, that the injury occurred within this city on a pavement or footway in said city on which persons regularly pass at the time of injury, and was used as a public footway. That the said Sydney E. Ewing was using due care and diligence in passing over said footway. That the gutter-plate from default of proper fastening on the gutter, or from bad construction of the gutter, or want of repair, was dangerous in its character, and so remained for some two months, that the injuries complained of were the necessary consequences resulting from stepping into the opening occasioned by the separating of the sections of said gutter-plate, and that the said Sydney E. Ewing was, by stepping between said sections of said gutter-plate, hurt and injured.

"If, gentlemen, these facts be satisfactorily proved from the evidence produced in this case, your verdict should be for the plaintiff, inasmuch as it establishes a clear case of negligence on the part of the city as the decisions in our State clearly establish ; but should you be satisfied from the evidence that Sydney E. Ewing was not using due care and diligence, recklessly and carelessly without proper caution, stepped in the opening between the said gutter-plates, she was guilty of contributory negligence and has no right to recover, it matters not as to the nature or character of the place. Again, if there was no dangerous place in the footway, if the com-

plainant suffered no injury, your verdict should be for the defendants.

"We must say to you in this connection, as to diligence and care in day time and night, the person is ever bound to use all necessary care and precaution to avoid danger, but in passing over your streets and sidewalks at night, he has a right to presume there are no hidden or secret dangers, and that streets or passages or footways without warning may be traversed safely, and should one in the night step into a hole carelessly existing from want of diligence on the part of the city, the city would be liable, though such a danger existing in the day time one could see, and running into it would be contributory negligence.

"We have, thus far, gentlemen, spoken of the liabilities of the city corporation, with reference to the law heretofore as laid down by the decisions of our State courts, which as I have stated are uniform and agree with, in the main, the English and American decisions throughout this country, but we have come now to one other defence made in this case, arising by reason of a statute recently passed by the Legislature of our State, 24th of April, 1889. This statute did not exist, and has originated since the decisions have been made, defining the liabilities of the city by reason of certain injuries caused to persons by reason of city's negligence, as laid down by the courts. The defence contend that admitting all liabilities as laid down by the courts heretofore as to city in cases of negligence charged, it amounts to nothing, inasmuch as the recent act of the Legislature changes the liability of the municipal corporation of the city of Wilmington, and shifts from it all liability for damages occurring in cases mentioned in said act, on the owners of the premises fronting the place where injury occurred. In other words, the defence say, and contend, that the meaning of said act is, that the said act has by its terms, meaning and effect, relieved the city from all damages to which it was admitted the city was heretofore liable, and placed the same upon the owner of the premises or property fronting upon any footway, etc., where injury has occurred. I think I have fairly stated the defence. The

plaintiffs say this law or amendment to charter, is unconstitutional, utterly in derogation of the powers conferred by charter of city and subversive of the imposition and liabilities imposed by charter. In order to determine this matter we must consider this act—though the clause upon which defence relies appears to be inserted in another act, which in its meaning as to the clause relied on has no connection whatever with the spirit and meaning of said act—we will, however, consider the said act as being separate and apart, and the question then comes, does said act relieve the city corporation from duties and liabilities heretofore imposed on it for which, our decisions say, it is liable.

"The act is in these words: 'The owner of any premises fronting upon any footways, shall be solely responsible for any damage that may result to persons or property by reason of any hole, excavation or obstruction in or upon said footways, or from any defective condition of such footways; provided, however, that such hole, excavation or obstruction or other defective condition of the footways aforesaid is not caused by the city or any of its authorized agents.'

"What does this act mean? No doubt the intention was to relieve the city of liabilities, which our courts say it had assumed and was bound for in damages. But can we so construe a statute which is in direct opposition to the meaning of the original to which it is really a supplement? We are to construe a charter, the charter of the City of Wilmington, not alone an act of Assembly; and in so doing whether it be the one or the other, the provisions of the Constitution, if they conflict, or are involved, must be taken into consideration to guide us to a proper consideration of this subject. The charter granted the City of Wilmington confers imposed duties and liabilities; it accepted the same, and for years has been acting thereunder, vested with the powers of taxation, and the courts have defined its powers and liabilities. Are they not fixed? The charter conveys rights, duties, obligations according to its special provisions, as ordered by the Constitution; by the charter or act of incorporation, the corporation received its life, breath and being;

true 'tis the creature of the Legislature, the life-giving power, but it must conform to the provisions of the Constitution, else it would be void, but when consistent it speaks for itself. We say consistent with the Constitution; we are dealing with our own, not other states, to which I shall allude briefly hereafter. Our Constitution provides and reserves no right or power save to revoke. Now a charter, as in this case, or act of incorporation was granted, vesting (which can't be denied), certain imposed duties and liabilities; the city accepts, and then by a subsequent act of the Legislature seeks to limit the powers and liabilities defined and decided by the courts. Can this be done? You may say there are no vested rights and no impairing of contracts, which is expressly prohibited by the Constitution; but we think the duties imposed and the liabilities incurred, are co-extensive and equal to bind the city corporation. We consider that duties once imposed and liabilities incurred by accepting and acting under an act of incorporation, cannot be divested, save the right to alter or amend be in the Constitution, or it affirmatively appear that the city has expressly agreed to such amendment, and should an act be passed not having such exception inserted, the incorporators having accepted without such reservations, have no right to claim the benefit thereof. This position is well settled by the main case, called the 'Brooklyn' case, cited by the able counsel, Mr. Harman, presenting in it facts very much similar to this case; there the question arose as to the amendment of a charter which it was contended could not be altered, parties having accepted and acted on it, but the Court on appeal said and admitted, *aliunde* the Constitution it could not be, but inasmuch as the Constitution by its express terms allowed alterations and amendments, and as the same provisions were embodied in the charter, and so accepted, it could be amended. No decisions have been cited in any way controverting the general doctrine, that parties accepting an act of incorporation are bound and held to its provisions, unless there be a right to change or alter expressly set forth in its provisions, except cases where both parties expressly assent to such change. The cases cited by the able counsel for the

defense from Oregon and California have no relevance to this case; the Oregon case by express terms being governed by express statutes in that State, and the California case having reference to the city being joined with the county.

"Again, this act or amendment in no way repeals, amends or changes the duties devolving upon the corporation as defined by our courts with reference to its care and supervision of the streets, footways, alleys, etc., of this city, nor can any such intent be gathered therefrom; it vests or gives no right of control or repair to the owners whose properties lie on the footways except under the ordinance, the sole right to repair or make new yet remaining in the said corporation, and the said owners can only repair the pavements or gutters by the permission of the said corporation. How then can an act of the Legislature make liable the owner for injuries occasioned by reason of defects, not caused by reason of the owners, in the sidewalks and gutters thereon over which they have no control and if such defects be caused by the negligence of the corporation whose duty it is to keep them in proper repair. Judge Brewer in the Kansas case well says, 'There is outside of positive law, no natural obligation on the part of a lot owner to keep the street or sidewalk in front of his lot in good repair, and no liabilities for injuries resulting from a failure to do so; hence when the city has assumed the entire control of the matter, a failure to repair the sidewalk may be negligence on its part, but is not on the part of the lot owner who has been ousted from all control.' An existing duty or obligation is an essential and necessary prerequisite of an affirmation of neglect or failure to perform.

"We have said it is the duty of this corporation to keep in repair the streets, sidewalks, etc., of the city, and if injury occurs to persons by reason of negligence of said corporation, in not so doing, it is liable; to enable it to discharge and perform this duty, having assumed the onus thereof it is invested with the power of taxation, and does levy and collect from its citizens (and there is no limit on this power) such sums as are necessary for the purpose The rate of taxation must be equal, but if property owners can be

held liable in damages for injuries that occur by reason of defects in sidewalks fronting their premises not occasioned by their fault, they would be not only unequally taxed, but also held liable for negligence or fault not of their own, but the negligence of the corporation in matters over which they were expressly excluded from any control, contrary to every legal and equitable principle. The true construction and meaning of the law is, that property owners shall be held liable and responsible for any acts done on sidewalks by them from which injury happens, but was never intended or meant in the slightest degree to shield or protect the city from any of its legal liabilities assumed under its charter, as has been well said. The city cannot transfer to private citizens that responsibility which for wise purposes of public policy, the law casts upon it, in reference to the care and safety of its streets and walks. This question involving the rights and liabilities of city corporations, as connected with the liabilities of private individuals, in case of injuries happening on streets and sidewalks, has given rise to numerous decisions, and apart from special statutes are uniform, and I will refer among the numerous cases to *40 Md., Flynn vs. Canton ; 16 Kan., Janson vs. City of Atchinson,* and *11 R. I., Hoeny vs. Spread.*

"We therefore say to you, gentlemen of the jury, that this act of Assembly upon which the defence claim the plaintiff has no right to recover, is as far as this case is concerned unconstitutional and void and presents no defence to this action."

### THE ORIGIN OF THE STATUTE.

At the February term of the Superior Court of New Castle County, A. D. 1889, one William H. Robinson brought an action on the case against 'The Mayor and Council of Wilmington' for injuries alleged to have been received by his slipping into a hole in a sidewalk in the city of Wilmington, and, though no evidence was adduced that the defective condition of said sidewalk was caused by the city or its agents, the said Robinson recovered

damages against said city in the sum of five thousand dollars. The city thought it unjust that it should be held liable for damages where the defective condition of a sidewalk was not actively caused by itself or its agents, and so had the above law passed by the Legislature.

Feb. 1889, action brought.

Feb. 18-21, 1889, motion for new trial denied.

March 1889, Street and Sewer Department took action to have law passed.

Apr. 24, 1889, law passed by Legislature.—*18 Del. Laws, 889.*

### LAW.

(1) The liability of a municipality for injuries resulting from unsafe and defective streets and sidewalks is either an express or statutory liability or an implied or common law liability.

*Hill vs. Boston, 122 Mass., 344.*

(a) The only express or statutory liability of the City of Wilmington is that contained in the act of 1889.

*18 Del. Laws, 889.*

And when there is an express liability there can be no implied liability for

" *Expressio unius exclusio alterius.*"

(b) And there never can be an implied liability when there is anything in either the charter of the municipality, or the legislation of the State, negativing the inference of such implied liability.

*2 Dillon, Sec. 1018.*

(2) A municipality is a creature of the Legislature, and as the Legislature can impose the duty and the liability so it can limit or even completely remove said duty and liability, unless prevented from so doing by the Constitution of the United States or the Constitution of our own State.

" The only restraint upon the power of the Legislature in this State is that imposed by the State or Federal Constitution."

*Wilson vs. P. R. R. Co., 5 Del. Ch., 524, at 534; 1 Dillon, Secs. 44 and 54–55 and note to 55; Cooley's Const. Lims., 230; Nichols vs. City Minneapolis, 30 Minn., 545, at 547; State vs. Allmond, 2 Houst., 612, at 634; Coyle vs. McIntyre, 7 Houst., 44, at 90–92 and 98–100.*

The above law in no way interferes with

### VESTED RIGHTS.

" The City of Wilmington has no vested rights against the State nor rights not subordinate to the authority of the State."

*Coyle vs. McIntyre, 7 Houst., 44, at 92; 1 Dillon, Secs. 55 (note) and 54 (note); Cooley's Const. Lims., 231.*

### NOR DOES THE SAID LAW IMPAIR THE OBLIGATION OF CONTRACTS.

"Its charter or act of right to incorporation is in no sense a contract with the State."

*Coyle vs. McIntyre, 7 Houst., 44, at 91.*

" Such legislative interferences cannot be said to impair the contract by which the corporation was formed because there is in reality but one party to it" [the State.]

*Coyle vs. McIntyre, 7 Houst., 44, at 90; 1 Dillon, Sec. 54.; 2 Dillon, Sec. 967; Pomeroy's Const. Law, 381; 3 Am. and Eng. Ency. Law, 693 and 745; Cooley's Const. Lims., 231; City Detroit vs. Blackeby 21, Mich., 84.*

The will of the Legislature is supreme and the law, therefore Constitutional.

*Sherman and Red. on Neg., Sec. 124 (Ed. 1880); 2 Dillon, Sec. 1018.*

EXEMPTION OF CITY FOR NONFEASANCE AND MISFEASANCE OF CERTAIN OFFICERS.

J. Barnard—at 375:

"I am unable to see why the same legislature may not create a city and limit its liability. The power is constantly exercised."
(yr. 1868)—*Gray vs. City of Brooklyn, 50 Barb., 365.*

J. Daniels:

"The redress may not always prove to be as entirely adequate to the injury as an action directly against the corporation itself, but even if that be conceded, it will not justify the conclusion that the act is in conflict with the Constitution on that account."
*Gray vs. Brooklyn, 2 Abbott's Ct. App. Dec., 267.*

J. Bradley—at 108-9:

"Except as far as qualified by the statute, its liability to individuals sustaining damages occasioned solely by the fault or negligence in the performance of that duty existed, and that to relieve itself from such responsibility it must be made to appear that the cause of the injury complained of, so far as it may tend to support an action, is within the provisions of the statute exempting the city from liability."
(yr. 1890)—*Bieling vs. City Brooklyn, 120 N. Y. App., 98;* (yr. 1882)—*Fitzpatrich vs. Slocum et. al., 89 N. Y. App., 358;* (yr. 1882) —*Hardy vs. City Brooklyn, 90 N. Y. App., 435.*

(City exempt from liability unless actual notice twenty-four hours before accident. No liability at all for constructive notice.)

J. Learned—at 518:

"The city shall not be liable to repair streets except after this *actual* notice, and thus regulating the *liability* it practically *regulates the duty* which the city owes to individuals. * * * A question similar to this was in *Gray vs. Brooklyn*, in which the Court of Appeals sustained a similar provision."
(yr. 1884)—*Van Vrankin vs. City Schenectady, 31 Hun., 516.*

J. Landon—at 204 and 205 :

" Its object is to exempt the city from liability unless it has actual notice [24 hrs.] as distinguished from constructive notice—which may be no notice. * * * The plaintiff urges that the statute is unconstitutional because it deprives the plaintiff of her remedy against the party who has injured her, and does not afford her any other remedy. * * * This statute does not take it away. * * * The Legislature may make such rules to secure it [remedial justice] as its wisdom approves subject only to the restraint of the Constitution."

(yr. 1889)—McNally vs. City Cohoes, 53 Hun., 202.

(City wholly and absolutely exempt, and others liable only if out of repair twenty-four hours.)

J. Crocker—at 463 :

" The act exempts her [city] from liability in any event, but the liability of other persons and public officers from damages is made to depend on this fact " [out of repair for twenty-four hours.]

(yr. 1863)—Parsons vs. City and County San Francisco, 23 Cal., 463.

(City wholly and absolutely exempt.)

J. Prim—at 526-27 :

" This provision of the charter, it will be seen, expressly exempts the city from any liability to persons for injuries received on account of streets being defective or out of repairs, that it certainly cannot be claimed that there is an implied contract to that effect, when in the very act of the Legislature under which the city is incorporated it is expressly provided that it shall not be liable for injuries to the person growing out of the defective condition of its streets and sidewalks."

(yr. 1869.)—O'Hara vs. City Portland, 3 Ore., 525.

(City wholly and absolutely exempt, but officer or other person liable for wilful neglect.)

J. Lord—at 259 :

" The first clause expressly exempts the city from any liability to persons for injuries received on account of the streets being defective or out of repair.   In *O'Hara vs. City Portland, 3 Ore., 526,* a provision similar to this clause was held to be constitutional and the city not liable for injuries sustained by reason of a defective sidewalk."

(*yr. 1881.*)—*Rankin vs. Buckman, 9 Ore., 253.*

(City wholly and absolutely exempt but council liable for " wilful neglect.")

J. Deady—at 647-8 :

" In *O'Hara vs. Portland, 3 Ore., 525,* the Supreme Court held that section so far as it exempted the city from liability to be Constitutional.   *   *   *   In *Rankin vs. Buckman, 9 Ore., 253,* a case arising in East Portland, the Court held in a similar section in the charter of that place that while the city was thereby exempted from liability in such cases [Council was not in case of ." wilful neglect"], neglect which will make them personally responsible must be ' wilful,' that is intentional and designed."

(*yr. 1892.*)—*Ball vs. Woodward, 51 Fed. Rep., 646.*

(County made liable by statute and county exempted by statute —no one liable).

C. J. Strahan—at 316 :

" The repeal of the statute creating the liability of a county for negligence is not the only way that liability might be destroyed. It is within the power of the Legislature to repeal the act creating a county, and with such repeal a liability would be as effectually canceled and destroyed as if the county never existed."

J. Bean—at 320:

" In *O'Hara vs. Portland, 525,* this Court held that an act of Legislature exempting the City of Portland from liability for an injury to the person, growing out of the defective condition of any

street or sidewalk was constitutional. And the doctrine of this case was recognized in *Rankin vs. Buckman, 9 Ore., 253.* If the Legislature can constitutionally take away both the common law and statutory right of action against a municipal corporation for an injury received from a defective highway, it certainly can withdraw the statutory remedy against a county."

(yr. *1892.*)—*Templeton vs. Linn County, 22 Ore., 313.*

J. Durfee—at 102:

"A city or town has no power unless *authorized by statute* to divest itself of its capacity to discharge the duty either by contract or ordinance."

(yr. *1874.*)—*Watson vs. Tripp, 11 R. I., 98.*

C. J. Gilfillan—at 547:

"Such corporations are creatures of the statute and have such powers, duties and obligations as the statute gives or imposes. In respect to liabilities for injuries by reason of defects in streets, the Legislature may impose it on the corporation or not as it deems most expedient, and it may prescribe the extent to which, or the conditions on which it shall be liable—and the conditions on which the liability shall be enforced."

*Nicholas vs. City Minneapolis, 30 Minn., 545.*

"But even if it be a contract (as in the case of a private corporation), if the State has reserved the right to appeal, alter or amend the charter of the corporation, the exercise of that right does not impair the obligation of the contract."

*Bailey vs. R. R. Co., 4 Harr., 389 at 401; Cooley's Const Lims., 337-338; 3 Am. and Eng. Ency. Law, 741-42-43; Gray vs. Brooklyn, 2 Abbott's App. Dec., 272.*

(a) This power has been reserved in our Constitution.

*Const. Del., 29, Sec. 17.*

(b) And its reservation in the Constitution is equivalent to its insertion in the charter.

"That object is effective by the Constitution, without any aid from the Legislative act, and therefore the reservation of power to revoke need not be expressly made in the charter."

*Del. R. R. Co., vs. Tharp, 5 Harr., 454 at 456.*

(c) The power to "revoke" necessarily includes the power to amend.

"The Legislature having the power to repeal necessarily has the power to alter, amend or abolish."

*Coyle vs. McIntyre, 7 Houst., 44 at 100.*

And the well known legal maxim that "the greater contains the less"— *Omne majus continet in se minus.*

*Broom's Legal Maxims, 141.*

(4) The Court has nothing whatever to do with the wisdom or propriety of a statute.

"Whatever may be thought of the wisdom or propriety of a statute,  *  *  *  When ascertained to exist it must be followed until the General Assembly shall think fit in their wisdom to make a different one."

*Watertown S. E. Co. vs. Davis, 5 Houst., 192 at 208.*

"The Constitution of this State vests the whole legislative power in a Senate and House of Representatives who represent all the people in the exercise of this highest attribute of sovereignty, and when these representatives are supposed, in any act of legislation, unwisely, or improperly, to restain what are assumed to be the rights of the people, it is for the people themselves to correct the evil through legislative repeal, and not by judicial usurpation."

*State vs. Chas. M. Allmond, 2 Houst., 612 at 634; Wilson vs. Balto. & P. R. R. Co., 5 Del. Ch., 524 at 534; Coyle vs. McIntyre, 7 Houst., 44 at 100.*

(5) If there be any doubt as to the constitutionality of the law, that doubt must be resolved in favor of its constitutionality.

"A reasonable doubt must be solved in favor of the legislative action, and the act be sustained."

*Cooley's Const. Lims.*, *218.*

"It is but a decent respect due to the wisdom, the integrity, and the patriotism of the legislative body by which any law is passed to presume in favor of its validity until its violation of the Constitution is proved beyond all reasonable doubt."

*Cooley's Const. Lims.*, *219.*

C. S. Strahan—at 320:

"It must not be overlooked that courts never declare an act of the Legislature unconstitutional unless the conflict is manifest and free from all reasonable doubt. This alone ought to be sufficient to save the act of 1887 from that fate."

*Endlich's Interpret. Stats.*, *7, 38 and 248—note.*

*William S. Hilles* and *Lilburne Chandler* for defendant in error:

The Mayor and Council of Wilmington seeks to escape liability under the provisions of *Sec. 1, Chap. 663, 18 Delaware Laws.* This act, so far as the same relates to the case at bar, the court below held to be unconstitutional, and the assignment of errors in this case go only to that point.

The part of the act in question (which is interpolated in, and has no connection with the general provisions of said act) is as follows:

"The owner of any premises fronting upon any foot-ways shall be solely responsible for any damage that may result to persons or property by reason of any hole, excavation or obstruction in or upon such footways, or from any defective condition of such footways, provided however, that such hole, excavation or obstruction, or other defective condition of the footways aforesaid is not caused by the city or any of its authorized agents."

Our answer to the above contention is:

*First.* This act had no application whatever to the case at bar; and

*Second.* If the act does apply, for various reasons it is plainly unconstitutional.

*First.* By the charter of the City of Wilmington, the corporation was given—
"The power to ascertain and fix the boundaries of streets, squares, lanes and alleys, or to repair and amend the same and provide for the paving thereof   *   *   *   to direct the paving of footways, and to prescribe the width thereof; to direct the laying out of gutters, and to prescribe the depth thereof."
*City Charter, Section 31.*

By the act of April 20, 1887, *18 Del. Laws, 352,* the powers previously vested in the City Council were conferred upon the Street and Sewer Department, to whom it was given " To have entire jurisdiction and control within the limits of said city, of the streets, squares, lanes, roads or alleys thereof, said jurisdiction and control to extend from building line to building line; *   *   *   and have the same rights and powers, and be vested with the same authority over the said streets, squares, lanes, roads, alleys, gutters, drains, sewers, natural water courses, runs and rivulets within the limits of said city"—as was previously exercised by the Council.

Under this provision of law it has been repeatedly held that the power conferred upon the City of Wilmington, carried with it a corresponding duty and obligation.
*Anderson vs. Wilmington, 8 Houst., 516-525; Robinson vs. Wilmington, 8 Houst., 409-414; Benson vs. Wilmington, 1 Hardesty, 63; 9 Houst., 359 ; Seward vs. Wilmington, 1 Marvel, 189 and 375.*

See also *Jones on Negligence of Municipal Corporations, Secs. 88-89.*

It was proven and uncontradicted that these gutters were constructed in the year 1871, and there is no proof of any change in the construction from that time until the time of the accident.

By an ordinance then in force it was provided as follows :

" It shall be the duty of the Street Commissioner of the City of Wilmington, under the direction of the Street Committee, to take the general superintendence of all main drains, gutters and common sewers, which may have been or may hereafter be built or constructed."

*City Ordinances (Edition of 1872),* 278.

The proof is that this gutter was originally defectively constructed. But be this as it may if the city have either actual or constructive notice of the defective condition it is bound to remedy it within a reasonable time.

See *Delaware cases supra.*

The neglect of duty on the part of the city may be either by acts of commission or by omission, and if the defective condition of this street was caused by the omission of the city to keep it in proper condition and repair, it is in no way relieved from liability by the act above quoted; which act does not exempt nor attempt to exempt the city from liability for a defective condition of the footway caused by the city or its agents.

*Second.* If the Court should be of the opinion that the case at bar is embraced within a proper construction of the wording of the act, it is then respectfully submitted that the act is plainly unconstitutional when applied to the facts of the case at bar.

There is considerable conflict of authority as to whether the Legislature may impose upon an abutting owner the duty of constructing and keeping in repair a pavement or sidewalk in front of premises owned by him.

*2. Dillon Municipal Corporations, Secs. 752-753.*

But apart from some statute plainly imposing such obligations,

there is no obligation on the part of an abutting owner to repair the sidewalk, *although he may be liable to be taxed for repairs made to the sidewalk by the municipality or by its direction.*

*Eustace vs. Johns, 38 Cal., 3-14; Rockford vs. Hildebrand, 61 Ill., 155; Rochester vs. Campbell, 123 N. Y., 405-409; Keokuk vs. Keokuk, 53 Iowa, 352; Beach on Public Corporations, Sec. 1490; Jones Negligence Municipal Corporations, Sec. 89; Dillon Municipal Corporations, 1012; Law vs. Kingsley, 82 Hun., 76; Fulton vs. Tucker, 3 Hun., 529; Chicago vs. O'Brien, 111 Ill., 532; Kirby vs. Association, 14 Gray, 249; Hartford vs. Talcott, 48 Conn., 525; Taylor vs. R. R. Co., 45 Mich., 74; Jansen vs. Atchson, 16 Kansas, 358; Flynn vs. Canton, Co., 40. Md. 312.*

Under the charter of Wilmington, there is no provision whatever to charge an abutting owner for such repairs as were, by the proof, necessary and needed to this gutter.

Under section 121 of the charter as amended, the Street and Sewer Department have full power and authority to *compel* the paving and repairing of footways and to assess the cost thereof upon the abutting owner, but such repairing must be at the suggestion, or at least with the permission and under the direction of the said department, who must

" Regulate and prescribe the mode of paving and repairing footways and the material to be used therein."

It nowhere appears that the city through any officer ever availed itself of this power, or that the owner of abutting property was in any default whatever.

It is beyond question that any statute imposing a special burden of this character must be strictly construed and not made to comprehend cases not falling within its very terms.

*Coley on Taxation, 276-609.*

*Beach on Public Corporations, Secs. 1125 to 1137 and 1116* and cases there cited.

An instructive class of cases bearing upon this point, are those where by statute, or ordinance, an abutting owner has been obliged

to remove snow and ice from his pavement under penalty for his failure to do so, and where such abutting owner has been sought to be made liable to one injured, by reason of the failure of such owner to comply with the statute, or ordinance. It has been invaribly held in such cases that the owner was not liable to such person and was not liable over to the city against whom damages had been originally recovered.

*See cases Supra, more particularly Flynn vs. Canton Co., 40 Md., 312 ; Moore vs. Gadsen, 93 N. Y., 12 ; Hartford vs. 1alcott, 48 Conn., 525-532-534; Rochester vs. Campbell, 123 N. Y., 405-409; Kirby vs. Asso., 14 Gray, 249.*

The construction which it is sought to place upon the statute by counsel for the city would therefore make it impose upon an abutting owner, *who was not only under no duty, but had directly no power to repair* the sidewalk, an unconditional liability to answer in damages to any one injured by reason of the defective condition of the said footway. Thus construed it would be an effort to hold him responsible for negligence where he was under no duty or obligation, and therefore could not be negligent. It would impose upon him the consequences of the wrongful act, or omission of another over whom he had no control. It would relieve the City of Wilmington *alone* among the municipalities of the State, *by special legislation,* from the consequences of its own unlawful act, or omission. It would deprive one injured in many instances of any right of action whatsoever. It would be a usurpation by the Legislature of judicial functions. It would be unquestionably repugnant, not only of the spirit, but to the letter of the Constitution of the State of Delaware, as well as to the Constitution of the United States.

Whatever may be the rulings in other states, it has been decided in Delaware by the Court of Errors and Appeals, in the case of *Rice vs. Foster, 4 Harr., 479-485,* that the courts of this State have power to declare unconstitutional a law, not in direct conflict with the language of the Constitution of the State or of the United States.

*Regent vs. Johnson, 9 G. & J., 365, 412-413 ; Welch vs. Wadsworth, 30 Conn., 155 ; Calder vs. Bull, 3 Dal., 386 ; Wilkinson vs. Leland, 2 Peters, 667 ; People vs. Toynbee, 20 Barbour, 218 ; Taylor vs. Porter, 4 Hill, 145; Goshen vs. Storlington, 2 Page, 137 ; Griffith vs. Commissioners, 20 Ohio, 609 ; Ross Case, 2 Pickering, 169.*

In this connection it is interesting to consider the language of Lord Coke in *Bonham's Case, 8 Coke, 118,* where speaking of an act of Parliament, which was generally supposed to be the supreme law of the land, he says :

" It appears in our books that in many cases the common law will control acts of Parliament, and judge them to be utterly void ; for when the act of Parliament is against common right and reason, or repugnant, or impossible to be performed, the common law will control it and adjudge such act to be void."

(*a*) It is submitted that the act in question is directly repugnant, not only to the spirit, but to the letter of *Section 7, Article 1* of the *Constitution of Delaware* which provides that no man " shall be deprived of life, liberty or property, unless by the judgment of his peers or the law of the land," as well as to the *Fourteenth Amendment* to the *Constitution of the United States,* which is practically similar, declaring that no State " shall deprive any person of life, liberty or property without due process of law."

What is meant by " due process of law or the law of the land ?"

That these expressions mean practically the same thing is undenied by the authorities.

*Cooley's Constitutional Limitations, 429 to 433 ; Bank of Columbia vs. Kelly, 4 Wheaton, 244.*

Judge Cooley, in his work on Constitutional Limitations, quotes with commendation the powerful and lucid definition of the phrase, " due process of law," as given by Mr. Webster in the great case of *Dartmouth College vs. Woodward, 4 Wheat., 518–581,* as follows : " By the law of the land is most clearly intended the general law ; a law which hears before it condemns ; which pro-

ceeds upon inquiry, and renders judgment only after trial. The meaning is, that every citizen shall hold his life, liberty, property, and immunities under the protection of the general rules which govern society. Everything which may pass under the form of an enactment is not, therefore, to be considered the law of the land."

In *Wilson vs. The B. & P. R. R. Co.*, *5 Delaware Chancery*, *524 to 539*, the Chancellor says " by the words ' due course of law and the law of the land,' * * I understand summons or notice, appearance of parties, pleadings to issue of facts of law, trial by jury of fact and judgment of a competent court upon verdict rendered upon facts or judgment of the court upon issues of law—*in both cases the proceedings to be according to the usual practice* of said courts."

*Ordronaux's Constitutional Legislation, 254–255.*

Every case in which the word " negligence " has been defined in the State of Delaware or elsewhere, has based such definition upon the omission of some legal duty. It is not denied that the Legislature may, within proper lines, impose duties upon individuals, which were unknown to the common law, but not having imposed such duty, it can impose no penalty for the failure to perform it. It can make no man responsible for negligence except " according to the usual practice " of the courts. Any other contention would be in direct conflict with " common right and reason, repugnant and impossible to be performed." Such statute, it is believed, has never before been applied to a case precisely similar to the one at bar, but it is plainly within the ruling of the courts in those states where statutes have been passed imposing an absolute liability on railway companies for animals killed or injured on their tracks independent of negligence on the part of the company, where such statutes have been uniformly held to be unconstitutional in that they violate the provisions of the Constitution against taking property without due process of law.

*Pollock on Torts, 3-355; Oregon &c. R. R. Co. vs. Smalley, 1 Wash., 206; S. C. 42, Am. & Eng. R. R. Case, 271; Bictenberg vs. R. R. Co., 8 Montana, 271, S. C.; 38 Am. and Eng.*

*R. R. Cases, 275; Jensen vs. R. R. Co., 6 Utah, 253; Cateril vs. R. R. Co., 2 Idaho, 540; Dacres vs. R. R. Co., 1 Wash., 525; Zeigler vs. R. R. Co., 58 Ala., 594; Memphis &c. Co. vs. Lyon, 62 Ala., 71; Thompson vs. R. R. Co., 8 Montana, 278; Railroad Co. vs. Outcalt, 2 Colorado App., 395; Birmingham, &c. R. R. Co. vs. Parsons, 100 Ala., 662; Denver, &c. R. R. Co. vs. Wheatley, 43 Pacific, 450; Zeigler vs. R. R., 58 Ala., 594.*

A similar ruling has been made where the Legislature has sought to impose upon the railroad company absolute liability for the funeral expenses of persons killed on their road irrespective of negligence.

*R. R. Co. vs. Lackey, 78 Ill., 55.*

It has been repeatedly held by courts that an abutting owner cannot be held liable for defects in the sidewalk over which he had no control.

*Rochester vs. Campbell, 123 N. Y., 405;* and cases cited under *First Proposition.*

(b). An exhaustive examination of the charters of the other municipal corporations of the State of Delaware shows that no similar provision is contained in any of said charters, but that this exemption from negligence is confined to the City of Wilmington.

*Holden vs. James, 11 Mass., 396; Piquet, 5 Pickering, 65.*

In this connection it is important to consider the municipality as having title to the real estate comprised within the limits of Ninth street. In this capacity, irrespective of its duties as a municipal corporation, it is equally responsible with an individual for injuries occasioned by its failure to use proper care in the management of its property.

*Dillon on Municipal Corporations, Sections 66 and 985-986; Cooley on Torts, 619-620; 1 Sherman & Redfield on Negligence, Sec. 285; 2 Thompson on Negligence, 740 and 658-666; Jones on Negligence of Municipal Corporation, Sections 38-39; 149 to*

*158; Pollock on Torts, 51–52; Savannah vs. Collins, 38 Georgia, 334; Hannan vs. St. Louis County, 62 Missouri, 313; Bailey vs. New York, 3 Hill, 531; S. C., 2 Denio, 433; Clark vs. Pickham, 9 R. I., 455; Cumberland County vs. Portland, 62 Maine, 504; Giles vs. Diamond State, 7 Houst., 556.*

(c) It was certainly not the intention of the Legislature to take away all right of action by a person injured through the neglect of a municipality. It is evident that apart from some neglect of duty by the owner of abutting premises such owner cannot be made liable, and it is submitted that the Legislature has no right to take away from a person injured in this way, all right of action whatsoever.

Article 1, Section 9 of the Constitution provides that " All courts shall be open; and every man for an injury done him in his reputation, person, movable or immovable possessions, shall have remedy by the due course of law, and justice administered according to the very right of the cause, and the law of the land."

It is not denied that the Legislature may change, limit or control the form of action, but it cannot do this to such an extent as to practically relieve the *tort feasor* from all responsibility for his negligence.

*Cooley's Constitutional Limitations, 445 and 352–353.*

Nor can the Legislature shift the obligation of a guilty party upon an innocent party by the passage of a law.

*Cooley's Constitutional Limitations, 457.*

(d) It is submitted that it is an attempt on the part of the Legislature to usurp judicial functions.

The Constitution of this State recognizes the plain distinction between a legislative and a judicial act. It is submitted that the statute in question is an attempt on the part of the Legislature to usurp judicial functions.

Whether a person, in a given case, is liable to forfeit his liberty or his property is always a judicial act. The Legislature may not declare that a thing, harmless in itself, is a nuisance or a tort, this being a plain province of the judicial department of the State.

*Tiedeman's Limitations of Police Power, Secs. 122 and 122-a.*

(e) The following cases, more or less directly bearing upon the subject in controversy, and involving and based upon the determination of the questions hereinbefore discussed, are in point.

*Noonan vs. Stillwater, 33 Minn., 198.*

Plaintiff was injured by defective sidewalk in the City of Stillwater. The charter of the city provided that it should be the duty of owners of land adjoining any street to construct and maintain in good repair, the sidewalks in front of their premises and, provided that such owners should be liable for all damages to whomsoever resulting from their neglect in failing to keep such sidewalk in safe condition. It was held that the latter provision was unconstitutional.

Judge Barry, in the course of his opinion, says: "I prefer to rest my objection to any such imposition upon the ground that it would be an attempt to shift upon the property owner, a private person, a liability for the failure of the public authorities to perform a governmental duty. While the expense of constructing and maintaining a sidewalk may be imposed upon a property owner by giving him the option to build and maintain it, or by taxing him for the cost of so doing, this is as far, it seems to me, as his liability can go."

The provision was held to be unconstitutional.

*Hicks vs. Milwaukee, 46 Wis., 559.*

Plaintiff and his wife were injured through defective condition of the public street in Milwaukee. The charter of the city exempted it from any liability for injury where work was being done on streets or sidewalks by contractors. The Court held this law unconstitutional, saying: "We do not think that the corporation

can by a special act be exempted from all liability in the premises."

*Durkee vs. Janesville, 28 Wisconsin, 464; Jones on Negligence Section 87; Hardy vs. Brooklyn, 90 New York, 435.*

In this case the Court say : " There must be a remedy in a case where one is injured without fault of his own, by a defect in one of the streets or approaches to the street, either against the city or some one of the officers."

*Fitzpatrick vs. Slocum, 89 N. Y., 365 ; County vs. R. R. Co., 8 A. & E., 118; Stewart vs. Palmer, 74 N. Y., 183 to 190 ; Uhlman vs. Balto., 20 Atlantic, 141; Eustace vs. James, 38 California, 3, 14 to 21; Hartford vs. Talcott, 48 Conn., 625–632 ; Elkwise, vs. Wickwise, 87 Ind., 77 ; 81 to 83 ; Keokuk vs. Keokuk, 53 Iowa, 352 to 354; Janson vs. Atkinson, 16 Kansas, 358 ; Flinn vs. Canton, 40 Md., 312, 318, 330 ; Kirby vs. Boylston Market, 14 Gray, 249 ; Taylor vs. R. R. Co., 45 Michigan, 74, 77-78 ; Honey vs. Sprague, 11 R. I., 456 ; Law vs. Kingsley, 82 Hun., 76-80 ; Wenzlick vs. McCotter, 87 N. Y., 122-126 ; Moore vs. Gadsden, 93 N. Y., 16 ; Rochester vs. Campbell, 123 N. Y., 405; 409 to 450 ; Babbage vs. Powers, 120 N. Y., 281 ; Elliott on Roads, 539 ; Dillon on Municipal Corporations, 1272-1273.*

It is submitted that it is the duty of the Court to so construe, if possible, the law in question as to make it consonant with justice and the Constitutional provisions and it is believed that this can be done (and that the intention of the Legislature went no further) in the following way :

The Legislature did not seek to exempt the municipality from the effects of negligence or want of care, but what it did seek to do, was, where an abutting owner had rendered through some act of his, or some omission on his part, the sidewalk in front of his property defective, that one injured should have an immediate right of action against him, in which event, as the municipality had been in no fault, and there should be no action against the city, but it was never intended that it should receive the force, and as we believe, unconstitutional construction, which would apply it to the facts in this case.

SPRUANCE, J.:—This action was brought against the Mayor
and Council of Wilmington to recover damages for injuries sustained
by Sidney E. Ewing, one of the plaintiffs on the 18th of October,
1894, occasioned by defective iron gutter-plates covering a gutter
extending from the adjacent property to the curb, across a certain
footway or sidewalk in said city.

It does not appear by whom said gutter-plates were placed in
said sidewalk, but they had been there more than twenty years,
and had been broken and out of repair for at least a year before
the accident.

The action is founded upon the alleged negligence of the city
in not keeping the said gutter-plates and sidewalk in proper repair,
and in suffering them to remain in an unsafe and dangerous con-
dition. By Section 31, of the charter of the city, the Council was
given power, " to ascertain and fix the boundaries of streets,
*   *   *  to repair and amend the same, and provide for the pav-
ing thereof; *   *   *  to regulate and fix the ascent and descent
of all streets; *   *   *  to direct the paving of footways and to
prescribe the width thereof." *   *   *

The act of April 20th, 1887 (*18 Del. Laws, 352*), created a
Street and Sewer Department, and gave to it " Entire jurisdiction
and control within the limits of said city of the streets, *   *   *
said jurisdiction and control to extend from building line to build-
ing line, *   *   *  and the same rights and powers, and *   *
the same authority over the said streets," *   *   *  as were
theretofore " held and exercised by the Council."

The city charter further provided in substance as follows:

SECTION 119. That upon application of certain freeholders
residing or holding property on any street, the Board of Directors
of the Street and Sewer Department are authorized in their discre-
tion to require the Street Commissioners to cause the footways of
such street to be paved with such material as the case may require,
and fix the curb stones agreeably to the ground plan and regula-
tions of the city. Upon the completion of such paving and curb-

ing the same is to be measured by the chief engineer, and such measurement transmitted by him to said board; and said board is to have the cost and expense of such paving and curbing assessed upon the owners of property bordering or fronting on the street, according to the number of feet in the street line of such property; and such assessment is to be entered in a record book, and from the time of such entry such assessment is made a lien upon the lands and buildings fronting on such street. The said board is to have a transcript or such recorded assessments transmitted to the city auditor to be recorded in his office—the said board is forthwith to present to each owner or person having charge of such property a bill for such expense so assessed to such owner—and in default of payment within sixty days, provision is made for the collection of the same with costs by the sale of such property.

"SECTION 120. The owner of any ground may pave his, her or their own front or fronts, provided it be completed within twenty days from the day of fitting the curb stone, and notice thereof given to such owner." * *

"SECTION 121. The Street and Sewer Department shall have full power and authority to compel the paving and repairing of footways between the curb stone and the building line" * * * "and to regulate and prescribe the mode of paving or repairing footways and the material to be used therein." * * * "The Street and Sewer Department may, however, at its option, pave or repair any footway of the city, and the expense of paving or repairing the same shall be assessed against the premises fronting on said footways, and shall constitute a lien against such premises."

"The method of assessment and such proceedings as may be had thereon, shall be the same, as far as may be, as now provided by law in regard to paving and curbing footways in Section 119 of this act.

"The owner of any premises fronting upon any footways shall be solely responsible for any damage that may result to persons or

property by reason of any hole, excavation or obstruction in or upon such footways, or from any defective condition of such footways ; provided, however, that such hole, excavation or obstruction or other defective condition of the footways aforesaid is not caused by the city or any of its authorized agents."

" SECTION 122.   Upon the completion of any paving or curbing as aforesaid, the Chief Engineer of the Surveying Department shall give to the owner of the property so curbed and paved, a certificate that it has been done according to the proper ground plan and regulation of the city."   *   *   *   "and no owner of property to whom such certificate is thus given shall be liable for any change or error of regulation, or subsequent curbing or paving of the same property by the Street and Sewer Department in consequence of such change or error, but the same shall be defrayed by the Street and Sewer Department."

All the above recited provisions were in force for several years before and at the time of the accident in question—and are believed to be all of the statute law material for the consideration of this case.

The defendant requested the Court below to charge the jury that ;

" If the jury believed that the defective condition of said sidewalk (if said sidewalk was defective) was not caused by the city or any of its authorized agents, then its verdict must be for the defendant."

The Court refused said request, and charged the jury, in effect, that the charter having imposed upon the city the duty to keep the sidewalks in repair, and the courts having defined that duty and the liability of the city arising from its default in the performance of such duty, that the Legislature had no right so to amend the charter as to exempt the city from such liability ; and that the act of April 24, 1889—*18 Del. Laws, 889*—being the last clause of Section 121 of the amended charter above recited, " is, as far as

this case is concerned, unconstitutional and void, and presents no defense to this action."

To this charge, and refusal to charge as requested, the defendant excepted, and the assignment of errors covers these and other points in the charge not necessary now to be stated. The jury rendered a verdict against the defendant on which judgment was entered.

In the case of *Coyle vs. McIntyre, 7 Houst., 44,* the Court of Errors and Appeals settled the law of this State as to the power of the Legislature over municipal corporations. It was there held that a municipal corporation is "a body politic or corporate established by law to assist in the civil government of the State, with delegated authority to regulate and administer the local or internal affairs of a city, town or district which is incorporated" * * * " that such a corporation may be controlled and its constitution altered and amended by the government in such manner as the public interest may require. Such legislative interferences cannot be said to impair the contract by which the corporation was formed, because there is in reality but one party to it. There is in fact no contract in any just sense of the word, and public municipal corporations are not founded on contracts."

*   *   *   *   *   *   *   *   *   *   *

" The Mayor and Council of Wilmington is merely an agency instituted by the State for the purpose of carrying out in detail the objects of government. It is essentially a revocable agency. It has no vested (interest in) any of its powers or franchises. Its charter" * * * " is in no sense a contract with the State. It is subject to the control of the Legislature, who may enlarge or diminish its territorial extent or its functions, and may change or modify its internal arrangement or destroy its very existence at discretion" * * * " The Legislature can divest the Council of any and every power and authority it possesses."

In view of this decision, it is difficult to see how the question of the consent of the city to the amendment of April 24, 1889, could have been of any consequence; but if such consent was ma-

terial, as it certainly was not, it may be fairly inferred from the fact that this amendment is incorporated in the charter as contained in the "Charter, Laws and Ordinances of the City of Wilmington," published by order of the council in 1893, and from the further fact that this amendment was urged and relied upon by the attorneys of the city as its principal defense to this action.

The sole question necessary now to be considered is, whether that part of the said amendment which purports to relieve the city from liability for damages resulting from the defective condition of footways, except such as are caused by the city or any of its authorized agents, is constitutional and void? For the purpose of this inquiry we may presume that the injury in this case was not, in the sense of the statute, *caused* by the city or any of its authorized agents.

Many of the cases cited in the argument were upon the construction of statutes imposing certain duties upon municipal corporations in respect to streets and sidewalks without expressly declaring the liability or non liability of the corporation in case of default in the performance of such duties.

The liability of a municipal corporation for injuries resulting from defective streets and sidewalks is either an express statutory liability or an implied liability. In general, but not uniformly, it has been held that where the duty of control over the streets is imposed upon a municipal corporation, there is an implied liability arising from default in the performance of such duty.

Such has been the construction given by the courts of this State to the charter of the City of Wilmington as it existed prior to the amendment of April 24, 1889, but these cases dealt only with the implied liability of the city under a charter which imposed upon it certain duties, and was silent as to its liability.

*Robinson vs. Wilmington, 8 Houst., 409; Anderson vs. Wilmington, 8 Houst., 516.*

The charter, as it now is, and was at the time of the alleged injury in this case, is express as to the circumstances under which the city shall and shall not be liable. "If," as is said in *Sherman*

*and Redfield on Negligence, Section 124,* " the statute, either expressly or by necessary intendment, enacts that the corporation shall not be subject to liability, there is the end of the matter."

The power to alter, modify or take away the liability of municipal corporations for injuries sustained from defective streets and sidewalks has been frequently exercised by State legislatures and sustained by the courts.

In *Watson vs. Triff, 11 R. I., 98,* it was held that it was the duty of the city to keep its highways in safe condition, and that the city could not divest itself of its capacity to discharge that duty, either by contract or ordinance, *unless authorized by statute so to do.*

*O'Hara vs. The City of Portland, 3 Oregon, 525,* was an action against the city for injuries to the plaintiff occasioned by a defect in the sidewalk which it was the duty of the city to keep in good order. The amended charter of the city provided, that " the city of Portland is not liable to any one for an injury to the person growing out of the condition of any streets." It was contended that this provision was unconstitutional and void. The Court sustained the constitutionality of the provision and held that the city was not liable to the plaintiff. *Rankin vs. Buckman et al., 9 Oregon, 253,* was an action against certain officers of the City of East Portland for injuries resulting from the alleged negligence of the defendants in not repairing a bridge. The charter of the city exempted the city from liability from accidents occasioned by the defective condition of streets, etc., and made the officers liable by whose wilful act or gross negligence the accident is caused. The Court approved of the decision in *O'Harra vs. The City of Portland,* exempting the city from liability, and sustained the provisions of the charter making the negligent officers liable.

*Templeton vs. Linn County, 22 Oregon 313,* was an action against a county for an injury resulting from a defective highway. Held, that at common law a county was not liable in such case ; that the statute making the county liable in such case having been repealed before the accident, this action could not be maintained. The cases of *O'Harra vs. Portland* and *Rankin vs. Buckman* were

approved, and the Court say, " If the Legislature can constitution-ally take away both the common law and statutory right of action against a municipal corporation for an injury received from a de-fective highway, it certainly can withdraw the statutory remedy against a county."

In *Nichols vs. City of Minneapolis, 30 Minn., 545,* provisions of the charter of the city, that no action should be maintained against the city on account of injuries from defective condition of any street, sidewalk, etc., unless such action be commenced within one year, nor unless notice be given within thirty days stating the place and time of the injuries, and the intention to claim damages of the city, were held to be constitutional. In reference to muni-cipal corporations, the Court say, " Such corporations are creatures of the statute, and have such powers, duties and obligations as the statute gives or imposes. The Legislature is presumed to regulate these as in its opinion the needs and interests of the people within the prescribed territory required. In respect to liability for injuries by reason of defects in streets, the Legislature may impose it on the corporation or not as it deems most expedient; and it may pre-scribe the extent to which, or the conditions on which, it shall be liable, and the conditions on which the liability shall be enforced."

In *Van Vranken vs. City of Schenectady, 31 Hun., 516,* the provisions of the charter of the city, that the city should not be liable for injuries sustained by defective sidewalks unless *actual* notice of the defect be given to the council or superintendent of Streets, twenty-four hours before the injury, and that claims for in-juries should be presented within three months, and actions brought within one year, were held to be constitutional.

In *McNally vs. City of Cohes, 53 Hun., 202,* a provision of the city charter, that the city should not be liable in damages for injuries occasioned by a street or sidewalk being out of repair, unless *actual* notice of the defect be given to the council or super-intendent of streets twenty-four hours before the injury, was held to be valid, and that without such *actual* notice there could be no recovery.

*Gray vs. City of Brooklyn, 50 Barb., 365,* was an action against the City of Brooklyn for injuries sustained by reason of a street being out of repair. The charter provided that the city should not be liable in damages for the nonfeasance or misfeasance of the common council or any officer of the city, or appointee of the council, of any duty imposed on them, or any of them, by the statute, but that the remedy should be by *mandamus,* or other proceeding to compel the performance of duty, or action against the members of council or officer.

Held that this statute was a defense to the city. The Court says, " I am unable to see why the Legislature may not create a city and limit its liability. The power is constantly exercised."

On appeal the decision below was affirmed.—*2 Abbott, Ct. App. Dec., 267.*

*Fitzpatrick vs. Slocum et. al., 89 N. Y., 358,* was an action under the above recited provisions of the charter of the City of Brooklyn against certain officers of the city to recover damages for injuries by reason of the negligent operation of a bridge. The Court held that the injury was not caused by the act or neglect of the defendant officers. That the said provisions did not exempt the city from liability to discharge a duty resting on it which has not devolved upon one of its officers. The Court say, however, that " the views here expressed are not in conflict with anything decided in the case of *Gray vs. The City of Brooklyn."*

*Hardy vs. The City of Brooklyn, 90 N. Y., 435,* is to the same effect.

In *Bieling vs. City of Brooklyn, 120 N. Y., 108,* the right of the Legislature to exempt the city from liability in certain cases specified in the charter, as before set forth, was distinctly recognized—the Court say that the city is liable, " except so far as qualified by the statute " * * * " that to relieve itself from such responsibility it must be made to appear that the cause of the injury complained of " * * * " is within the provision of the statute exempting the city from liability. That defense, was not, by the evidence in the present case established."

In *Parsons vs. City of San Francisco, 23 Cal., 463,* a statute exempting the City of San Francisco from liability for injuries occasioned by a street being out of repair, and providing that if the defect had existed for twenty-four hours, the persons on whom the law may have imposed the obligation to repair, and the officers through whose negligence such defect remained, should be liable to the party injured, was held to be constitutional.

*Eustace vs. Johns, 38 Cal., 3,* while holding that, under the charter of the City of San Francisco, it was the duty of the city to keep the streets in repair, and that it was not the duty of adjacent owners so to do, the court recognized the validity of the provisions of the charter exempting the city from liability for injuries from defective streets, and transferring such liability to the individual officers and agents of the city whose personal neglect or malfeasance occasioned the injury.

In *Hicks vs. The City of Milwaukee, 46 Wis., 559,* it was held that the provisions of the charter exempting the city from liability for injuries occasioned by the condition of the streets or sidewalks under certain circumstances, were invalid, as granting to the city a special immunity, not enjoyed by other like corporations, contrary to " the principles of constitutional law," and in violation of Section 9 of Article I, of the Constitution of Wisconsin, " That every person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character."

We make no criticism upon this application of the State Constitution, but we know of no " principles of constitutional law " which prohibit the Legislature from granting to a city special privileges and immunities not enjoyed by all other cities.

The theory of the defense is, that in order to hold valid the provisions of the charter exempting the city from liability it must be shown that there is provided a valid remedy against the owners of the adjacent property.

While the maxim, " that where there is a wrong there is a remedy," is in general true, it is subject to qualifications and exceptions.

It is well settled that an action of tort for injuries from defective highways will not lie against a county, in the absence of a statute giving such action.— *Carter vs. Wilds, et al., Commissioners of the Levy Court of Kent County, 8 Houst., 14; Hill vs. Boston, 122 Mass., 344; Templeton vs. Linn County, 22 Oregon, 313.* Nor could such an action against the State be maintained.

The Legislature had the right to impose on the abutting owner the duty of repairing the footways in front of his property, and, considering all of the above recited provisions of the charter together, it is by no means certain that they have not done so ; and beyond doubt the amendment of April 24, 1889, purports to make such owner liable for damages resulting from the defective condition of such footways, not caused by the city or its agents.

We do not, however, consider it necessary in this case to determine whether the Legislature has imposed upon property owners the duty of repairing the adjacent footways, or whether that part of the said amendment which purports to make such owners responsible for damages resulting from the defective condition of such footways, is constitutional. It will be time enough to consider these questions when they arise in an action in which they are material.

The plaintiffs have no vested right to sue the city, in this action.

Such liability as is now sought to be enforced never arises from any implied contract between the city and the persons injured, but in the absence of statutory exemption it is implied by law from the duty imposed by law upon the city.

Before the happening of the accident in question, the city was relieved of such implied liability by the express term of the amendment of April 24, 1889, if such amendment is constitutional.

We know of no provision of the Constitution of this State or of the United States which this amendment violates. There is great danger in declaring a law unconstitutional because of its supposed conflict with some vague principle of constitutional law. In such cases courts are in danger of substituting their idea of what the law should be for their judgment of what the law is. Caution

should be exercised in declaring an act of the Legislature unconstitutional, and the presumptions are in favor of its validity. If after due consideration a reasonable doubt remains, it should be solved in favor of the act, and it should not be declared unconstitutional unless it be so, clearly and manifestly.

*Cooley's Const. Lims.*, *218 and 219.*

The great burden imposed upon municipal corporations by their unrestricted liability for injuries occasioned by defective streets and sidewalks, has doubtless been the cause of the frequent modification or removal of such liability. The relief of the city from this unrestricted liability was obviously the main purpose and design of the Legislature in enacting this amendment, and this main purpose and design should not be defeated, even if the provision making the adjacent owners liable in certain cases should for any cause fail to be effective.

" If a statute attempts to accomplish two or more objects and is void as to one, it may still be in every respect complete and valid as to the other."

*Cooley's Const. Lims.*, *178—181.*

From considerations of public policy, as to the sufficiency of which we have no right to determine, the Legislature has by an amendment of the charter of the City of Wilmington, limited the liability of the city to cases of defective condition of footways, " caused by the city or any of its authorized agents," and we hold that the said limitation was within the power of the Legislature, that the said amendment, so far as this case is concerned, is constitutional and valid, and that the Court below erred in its charge to the jury and in its refusal to charge as stated above. The judgment below is reversed.

PENNEWILL, J. (dissenting):—I regret very much that I cannot agree with the majority of the Court in the conclusion they have reached in this case; while I have not considered it necessary to prepare any extended dissenting opinion, or give at much length the reasons which have led me to a different conclusion, I nevertheless

deem it proper to briefly state the position I have taken, and wherein I feel bound to differ from the majority of the Court.

I am not prepared to say that it is not competent for the Legislature to relieve the municipality from liability for injuries caused by defective footways without placing the liability elsewhere, and while expressing no opinion on that question, yet I think it will be found upon examination that in almost every case, if not in every case, in which a city has been so relieved of such common law liability, it has been imposed upon certain officers of the city or other persons whose duty it was to repair such footways. And the provision, found in so many statutes, which exempts the city from liability unless certain notice is given, or claim is made or suit is brought, within a certain time, and which has been quite uniformly held to be constitutional, cannot be regarded as sustaining the validity of a statute which relieves the city from liability, because such a provision does not attempt to take away the remedy for such injuries, but only to regulate its use. This the Legislature unquestionably has the right to do.

But the statute in question, and which this Court is called upon to consider and construe, seeks not only to relieve the city, but also to impose on the owner of the premises fronting upon the footways, the liability for all injuries caused by defects in such footways, provided the same are not caused by the city or its authorized agents. It becomes necessary, therefore, to inquire whether the statute is constitutional and valid in so far as it undertakes to impose such liability upon such owner; and if it be not constitutional and valid in that particular, whether it can be held to be constitutional in so far as it seeks to relieve the city.

I am clearly of the opinion that at the time of the passage of this statute there was no duty resting upon the owner of the premises to repair the footways, but that such duty rested primarily and absolutely upon the city, which had not only the power to make the repairs, but was possessed with complete supervision and control over the footways, and had all the means, by taxation, assessment, and otherwise, to perform such duty. It is true that the

owner might make such repairs, but it was discretionary and not mandatory, and necessarily under the supervision and control of the municipality. Such owner was without the means and power possessed by the city in that behalf. It therefore not being the duty of such owner to repair the footways, it necessarily follows that it was not within the power of the Legislature to impose upon him a liability to third persons for injuries caused by the defective condition of such footways; for it is most elementary that such liability cannot be imposed where there is no negligence, and there can be no negligence in this sense when there is no obligation or duty. A statute which seeks to create a liability irrespective of negligence has been quite universally held to be invalid upon constitutional grounds, as well as repugnant to sound reason.

But it is earnestly contended that even though the duty to repair did not rest upon the owner prior to the passage of the act which we are considering, yet it was placed upon him by this act which imposed the liability. It is urged that such duty was created or arose in some way by implication; that is, when the Legislature declared by this statute that the owner should be liable, it must have necessarily followed that the same statute raised the duty, because there could not be any liability in the absence of a duty. But such a process of reasoning I submit, is simply begging the question, and is in effect equivalent to saying that there must have been a duty, otherwise the enactment could not be constitutional. Besides, if the act that imposed the liability also necessarily created the duty, then there would be no meaning in the expression which is axiomatic, "there can be no liability when there is no duty," because the liability would always carry with it the duty.

Believing that the statute is unconstitutional in so far as it attempts to impose the liability on the owner of the premises, it remains only to inquire whether it can be held to be constitutional in so far as it would exempt the city from liability, assuming that it is competent for the Legislature to so exempt the city, and that a statute having that for its sole purpose would be constitutional.

Is the statute, in so far as it would relieve the city, so separable from, and independent of, that part which seeks to impose the liability on the owner, that the former can be held to be valid even though the latter be unconstitutional? In this connection it is needful to keep clearly in mind the very language of the act, which is as follows:

"The owner of any premises fronting upon any footways shall be solely responsible for any damage that may result to persons or property by reason of any hole, excavation or obstruction in or upon such footways, or from any defective condition of such footways: Provided, however, that such hole, excavation or obstruction or other defective condition of the footways aforesaid is not caused by the city or any of its authorized agents." It will be noted that the city is not expressly exempted by the terms of the statute, but only by implication, by making the owner solely responsible. The important question that arises is, did the Legislature, at the time of the enactment of the statute in question, intend to relieve the city of liability if the same could not be placed on the owner? Or did the law-making body merely intend to shift the responsibility from the city to the owner? If the latter, then it is inconceivable that it should have intended that the statute, in so far as it exempted the municipality should be operative even though the other part should be invalid. It must be remembered that prior to the passage of the statute the city was liable for such injuries as the Legislature sought to impose upon the owner, and it was even a common law liability. I submit that the very effort to impose the liability upon the owner clearly indicates that it was not the intention of the Legislature to take away entirely the remedy for such injuries; and it is a fair, nay an almost irresistible inference, that the law makers would not have taken away the remedy as against the city had they known that their act would leave the party injured absolutely remediless. "The owner of the premises shall be solely responsible." The effect of that language, it is insisted, is to relieve the city which had been hitherto liable. There is nothing else in the act which could possible give the relief con-

tended for. Then if that provision—" The owner shall be solely responsible "—is held to be invalid, what is there left upon which the city can claim exemption from liability ? *Cooley* in his work on *Constitutional Limitations, pages 211 and 212,* says, " If when the unconstitutional part of a statute is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. The difficulty is in determining whether the good and the bad parts of the statute are capable of being separated within the meaning of the rule." And if the objects sought to be accomplished " are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the Legislature intended them as a whole, and if all could not be carried into effect the Legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected must fall with them." And in a note, page 212 of the same authority, the following language is used : " It must be obvious, in any case where part of an act is set aside as unconstitutional, that it is unsafe to indulge in the same extreme presumptions in support of the remainder that are allowable in support of a complete act when some cause of invalidity is suggested to the whole of it. In the latter case, we know the Legislature designed the whole act to have effect, and we should sustain it if possible ; in the former, we do not know that the Legislature would have been willing that a part of the act should be sustained if the remainder were held void, and there is a general presumption more or less strong to the contrary. While therefore in the one case the act should be sustained unless the invalidity is clear, in the other the whole should fall unless it is manifest the portion not opposed to the Constitution can stand by itself, and that in the legislative intent it was not to be controlled or modified in its construction and effect by the part which was void."

I do not believe the Legislature would have been willing that the act in question, in so far as it by implication relieved the city of

liability, should be sustained if that part which imposed the liability on the owner were held void. In my opinion therefore the act is wholly unconstitutional and void, and accordingly I hold that the former liability of the city for injuries caused by the defective footways is not in any wise affected thereby.