William F. JACKSON and Margaret J. Jackson, Plaintiffs,

v.

Fred MOSS, Jr. and Thelma S. Moss, Defendants.

Superior Court of Delaware.

New Castle.

Nov. 15, 1968.

Rodman Ward, Jr., Prickett, Ward, Burt & Sanders, Wilmington, for plaintiffs.

James F. Kelleher, Wilmington, for defendants.

STIFTEL, President Judge.

On September 1, 1967, plaintiffs instituted suit against the defendants for injuries sustained by Margaret J. Jackson when she tripped and fell over an uneven portion of public sidewalk on which she was proceeding across the front of the defendants' premises. Mrs. Jackson and her husband (who sues for loss of his wife's services and companionship) contend, *inter alia* that the defendants maintained a defective footway in violation of 18 Del. Laws, Ch. 663, § 1, and that they were negligent in failing to repair the defect, of which they knew or ought to have known. Defendants filed no answer, but moved for dismissal of the complaint. Although the Court agreed with the defendants that Delaware law imposed no liability for the defective condition of sidewalks on an abutting landowner unless he caused the condition, the motion to dismiss was denied in order to afford the plaintiffs an opportunity to prove that the defendants had caused the defect. Thereafter, defendants answered the complaint, and on May 13, 1968, filed with the Court a motion for summary judgment, accompanied by an affidavit of Fred Moss, Jr., to the effect that neither he nor his wife nor their agent caused the pavement to become uneven. The affidavit also indicated that the defendants had received no notice from the city prior to Mrs. Jackson's accident regarding repair of the pavement.

The complaint in this case is based primarily on 18 Del.Laws, Ch. 663, § 1, amending 17 Del.Laws, Ch. 207, § 121. Defendants rely on the *per curiam* opinion in Fleith v. Cunningham, 7 Pennewill 97, 76 A. 607 (Del.Super.1908) claiming that the statute imposes liability on a property owner "only upon failure to repair after notice to do so given in accordance with the statute.", ibid., 76 A. 609. The brevity of the *Fleith* opinion is puzzling in light of Mayor and Council of Wilmington v. Ewing, 2 Pennewill 66, 43 A. 305 (1899), where our Supreme Court had before it the same statutes. The Superior Court had permitted Ewing to recover against the city for injuries sustained as a result of a defective sidewalk, deciding that 18 Del.Laws, Ch.

663, § 1, exempting the city from liability, was unconstitutional. In reversing, the Supreme Court said:

"The theory of the defense is that, in order to hold valid the provisions of the charter [of Wilmington] exempting the city from liability, it must be shown that there is provided a valid remedy against the owners of the adjacent property. While the maxim 'that where there is a wrong there is a remedy' is, in general, true, it is subject to qualifications and exceptions. It is well settled that an action of tort for injuries from defective highways will not lie against a county, in the absence of a statute giving such action. [Citing cases]. Nor could such an action against the state be maintained. The legislature had the right to impose on the abutting owner the duty of repairing the footways in front of his property, and, considering all of the above-recited provisions of the charter together [§§ 31, 119, 120 and 121, as amended] it is by no means certain that they have not done so; *and beyond doubt, the amendment of April 24, 1889 [Del.Laws, Ch. 663, § 1] purports to make such owner liable for damages resulting from the defective condition of such footways not caused by the city or its agents.* We do not, however, consider it necessary in this case to determine whether the legislature has imposed upon property owners the duty of repairing the adjacent footways, or whether that part of the said amendment which purports to make such owners responsible for damages resulting from the defective condition of such footways is constitutional. It will be time enough to consider these questions when they arise in an action in which they are material. The plaintiffs have no vested right to sue the city in this action * * * The great burden imposed upon municipal corporations by their unrestricted liability for injuries occasioned by defective streets and sidewalks has doubtless been the cause of the frequent modification or removal of such liability.

The relief of the city from this unrestricted liability was obviously the main purpose and design of the legislature in enacting this amendment, and this main purpose and design should not be defeated, even if the provision making the adjacent owners liable in certain cases should for any cause fail to be effective. * * * (Emphasis added)."

Ibid., 43 A. 308–309.

It is significant that the position of the dissenting Justice in *Ewing* comes from his conviction that 18 Del.Laws, Ch. 663, § 1, was intended to impose immediate and direct liability upon abutting landowners, thereby preserving a remedy for those wrongly injured. He claimed that the legislature failed to create in abutting landowners a duty to repair upon which the liability imposed on them could be constitutionally predicated; and that, if the portion of the statute imposing liability on abutting landowners is declared unconstitutional, the portion relieving the city from liability must also fall, otherwise the clear legislative intent to preserve a remedy for injured pedestrians would fail. Had the Court supposed that notice by the city was a prerequisite to the landowner's duty to repair, and therefore a prerequisite to his liability, they might well have rendered a unanimous opinion. Yet nowhere in the case is notice by the city to abutting landowners considered. This is not surprising in light of the history of the statutes.

The first statute, in 1883, dealt only with curbing and paving of footways along the streets. Repairing was not mentioned. There were three ways in which paving and curbing could be accomplished: (1) City Council, on the application of fifteen freeholders on a particular street, could assess costs for paving and curbing on abutting landowners whether or not they approved (17 Del.Laws, Chap. 207, § 119); (2) if the abutting landowner wished to avoid the assessment, he could do his own paving (§ 120), provided the work was completed *within 20 days of receipt of notice from*

*the city* that the curb stones had been placed (emphasis supplied)"; and (3) Council could compel a landowner to pave his footway in front of his property (§ 121).

A repairing provision first made its appearance in 1889 in 18 Del.Laws, Chap. 663, § 1, amending 17 Del.Laws, Chap. 207, § 121. The city was given the authority to "pave or repair any footway of the city" and to assess the costs against the premises fronting on said footway. This repairing amendment did not mention the right of the fifteen freeholders to effect repairs and the right of the landowner to do it himself provided the work was completed within 20 days of the receipt of notice from the city that the curb stone had been placed, as provided in Secs. 119 and 120 of the previous paving statutes in 17 Del.Laws.

Two years later, in 19 Del.Laws, Chap. 215, the Street and Sewer Department was given the right to "repair any footway of the city *without notice being first given to the owner or owners of the abutting property.*" and the act further provided that the "expense of repairing the same shall be assessed in the same manner as provided for curbing and paving in this act * * *". There is no suggestion in this latest amendment that notice be given to the abutting landowner.

■ In 1889 (18 Del.Laws, Ch. 663), when the abutting landowner was made "solely responsible for any damages * * to persons or property by reason of any hole, excavation or obstruction in or upon such footways, or from any defective condition of such footways * * *", the law contained no requirement that the abutting landowner receive notice before repairs could be made. The *Fleith* case, which conditions the liability of abutting landowners upon receipt of notice from the city to make repairs is not justified from the history of the statutes. The *Fleith* ruling permits abutting landowners to ignore dangerous conditions of which they are aware until they are notified of these conditions by the city and are instructed to repair. This is unrealistic. It endangers the safety of the public and cannot be justified by the statutory law in existence. In fact, the threat of assessment for repairs without notice, as provided in 19 Del.Laws, Ch. 215, § 119, appears to be a spur to a prompt repair of sidewalks by abutting landowners in contradistinction to the encouragement of delay by the construction given the statute in *Fleith.*

■ I have been unable to find a reported Delaware decision which has followed *Fleith.* Jones v. Taylor, an unreported letter decision, citing *Fleith,* dated July 5, 1961 (C.A. 1088, 1959, N.C.C.) dismissed a case against defendant landowner because no notice to repair had been given to defendant by the municipality. This decision, however, dealt with the Newport charter in 24 Del.Laws, Ch. 195. In Sections 9 and 10 thereof, the municipality was permitted to compel repairs or to compel the removal of any obstruction or nuisance on the sidewalks only after giving the landowner written notice. Nowhere does the statute impose liability on the abutting landowner (18 Del.Laws) as in the Wilmington statute. If such liability arose at all, it did so by the implication of the landowner's duty to repair and since this duty did not arise in Newport until notice was given in accordance with the statute, then no liability preceded the notice. In light of the provisions in the Newport charter, no other result could have been obtained.

Defendants' motion for summary judgment is denied. It is so ordered.